Good morning all. Our first case for argument this morning is Haley v. Kolbe & Kolbe Millwork. Ms. Hodge. Good morning, Your Honors. Susanna Cruz-Hodge for Plaintiff's Appellants. May it please the Court. Today I'd like to discuss two issues and submit the remainder on our briefs. First, I would like to discuss the District Court's Daubert ruling excluding plaintiff's expert, Mr. Wolfe. In excluding Mr. Wolfe, the District Court abandoned its gatekeeping role and stepped into the shoes of the jury. It ignored controlling precedent from this Court and delved into the factual underpinnings of Mr. Wolfe's conclusion. Second, the District violations that plagued the proceedings below. The District Court took a gotcha approach here. It refused to consider key evidence and then it excluded Mr. Wolfe based upon the absence of that very evidence. Not only was the District Court's factual determination improper, but the evidence conclusively shows that the District Court got it wrong. The result was not only that Wolfe was excluded, but that a class of thousands were denied their day in court. I'd like to focus on the District Court's misapplication of Daubert in this case. As we know, Rule 702 and Daubert have a purpose and that purpose is to weed out junk science. That's not what the Court did here. This Court has stated time and again that the District Court is not charged with determining whether an expert is correct. The District Court is charged with determining whether the expert relied upon established principles and whether he is qualified. The District Court here weighed evidence and delved into the factual underpinnings of Mr. Wolfe's conclusion. That was improper because it usurped the jury's role. When we say that, we usually are talking about evaluating the expert's conclusions, right? Yes. And here, if I understand this issue, it's undisputed, at least I didn't see you disputed, that Mr. Wolfe made a basic factual error as part of the foundation of his opinions. Two things, Reiner. We did not concede that Mr. Wolfe made a factual error. And in fact, we stated that he did not make a factual error. Second of all, the District Court's delving into that issue and determining that Wolfe made a factual error usurped the role of the jury. Did you tell, where did you tell the District Judge that he did not make an error in your Daubert brief in the District Court? In our opposition to the Daubert motion, we argued, first and foremost, and I believe it's a proper argument, that the District Court should not delve into the factual underpinnings and that Colby's motion was primarily a disagreement based upon a disagreement with what our experts ultimately concluded. And that was a proper argument because the District Court adopted that. Would you answer my question, please? Sure. Well, okay. So with respect to the sash and whether the sashes are fixed. Whether he made a mistake. Yes. We stated in our opposition on page 11 that even if the sashes were painted, Wolfe's opinion would not change. So the factual error was undisputed? No. Our position was that he. Did you dispute the factual error? We did dispute the factual error. Please show me where. Well, on page 11. Well, in a few places. Number one, we stated that on page 11 that the unfinished underside was present in many windows. But that even if the sashes were painted, Wolfe's opinion would not change because that was one component of a comprehensive scheme. And the District Court in finding that there was an error. Sorry, I'm looking at page 11 of your brief in opposition to defendant's motion to exclude. Where do I see? What should I see there? I don't have the actual brief in front of me, but on page 11 we stated two things. We stated that the unfinished underside was present in many windows and that it was but one component of a comprehensive scheme. And we also stated that even if the sashes were painted, Wolfe's opinion would not change. I see something along those lines about on page 18 of that brief, but not a dispute about the factual error. You argue that it doesn't matter, but my question was, in essence, can we at least start from the And where did you tell the district judge that? I believe that that's what those two statements mean, but we also told the district. They're not there. Well, we also told the district court that Wolfe was not wrong. You just said it didn't make any difference. That doesn't mean he was correct. Well, I think it means both. It doesn't make any difference because if the sashes are finished, that doesn't cure the defect because there's nothing that you can finish wood with that would allow it to sit in water. But the crux of our opposition was that the district court should not delve into those factual issues. And the court adopted that argument and found that the majority of what Colby based its Daubert motion on went to credibility and weight of evidence. So defendant can't not now argue we waived that argument given the court adopted that very argument and said the majority of what If the district court is delving into whether an expert based his conclusion on an error or not, it's delving into the factual underpinnings. It's the same exact argument adopted by the court in denying the remainder of the motion. Furthermore, the district court ultimately decided that Wolfe had to be excluded, not only because he had committed what she believed was an error, but also because it believed that the four factors that made up Mr. Wolfe's argument were interrelated. And that in and of itself was an error. Number one, this court has stated in Cyrus v. City of Mocoanago that it is error for a district court to exclude an expert because the expert cannot isolate one factor from multiple factors causing injury. This court stated in that case that the unbundling of factors goes to the weight of the evidence and to credibility, which are issues to be resolved by the jury. Aside from that, the record shows that the district court got it wrong. If we just look at the report, Mr. Wolfe states and this can be found in A193 in the record. This is at the end of the introduction where Mr. Wolfe is discussing that Colby has replaced some sashes. He states, the product remedy provided by Colby does not address the underlying problem. One, inadequate sales flow. Two, weatherstrip placement, trapping water. Three, the narrow gap. He says it again. I'm sorry, where are you reading from? I'm sorry, this is on A193. It's page five of the report. Okay, thank you. And you see there on paragraph 26. One, two, three. If you turn then to pages A274 in the paragraph beginning based on our analysis, Wolfe states again. Although the sill designs have changed, all of the window designs still have a problem of one, the flat slope. Two, the narrow gap. And three, the placement of the weatherstrip. No discussion of the fourth factor. If we look at pages 276, again, Mr. Wolfe is summarizing the design defects. And you see in parentheses, the flat sill, the weatherstrip, and the narrow gap. Again, no discussion of the fourth factor. The district court relied on testimony from Mr. Wolfe's deposition. But it misread that testimony. And that's clear just by looking at the testimony. If we look at pages 45  to 47, he states, you have to look at all factors together. You're trying to parse out. You know, what you're trying to do is parse out the slope from the gap from the weatherstripping. Those factors work together. No mention of the fourth factor. This is stated again and again in the deposition. In appendix A362, again, he says, the defects we bring up, they work together. The slope, the gap, the weatherstrip. This happens time and again in the deposition transcript. Because the fourth factor was never discussed. In fact, the only time it comes up is when counsel asks Mr. Wolfe about the one paragraph in his report in the introduction and asks him to affirm that it states factors 1, 2, 3, and 4. There's no discussion ever of that fourth factor. So there was no support in the record for the district court to find that the factors were interrelated. But based upon this court's ruling in Cyrus, the district court should not even have gone that far. But even if this court finds that the district court properly delved into the factual underpinnings here, the record shows, number one, there was a dispute of fact between the parties over whether there's an error. And number two, the court got it wrong. We know from the evidence a few things about these sashes. We know that when customers order pre-finished windows from Colby, it doesn't finish the bottom of the sashes. We know that Colby places their serial number at the bottom. We know from our own expert, Peter Lacks, that even finished wood must experience rapid water runoff and cannot be exposed to prolonged periods of wetting. We know from our expert that it doesn't matter if the sashes are finished because you can't finish wood with anything that will allow it to withstand rot if it sits in water. And in fact, in discovery, we uncovered documents where Colby's own distributor told Colby, maybe these sashes should be made of selco, which is a PVC type material. This is all evidence that should at minimum have been presented to a jury so that the jury could have evaluated whether Wolf got it wrong. It's within the jury's role to listen to Wolf and number one, determine whether the four factors are interrelated and if the jury finds they are, it's within the jury's role to determine that if one of the factors was based upon an error, the entire theory is not credible. Finally, the district court erred in excluding the entirety of Mr. Wolf's opinion. As this court has stated before in Smith v. Ford, expert testimony is relevant if it helps to try a fact on any issue in dispute. Mr. Wolf's opinion regarding the aluminum clad windows spanned over 50 pages and it relied upon multiple appendices. These pages and these appendices discussed Wolf's testing and observations of not only plaintiffs' windows, but of other class members' windows. It also discussed and compiled hundreds, if not thousands of complaints from other customers detailing the same type of issues that plaintiffs have here. Water pooling under sashes, sashes wicking up water, sashes rotting, weatherstrip placement or a weatherstrip holding back water. This is all One of Wolf's opinions in his report is that the pattern of the rot, which is a bottom to top pattern, caused him to believe that other issues were not causing a defect. Not insulation and not condensation and not glazing because you would see rot in other areas, especially with condensation and glazing, you'd see rot starting at the top of the sash going down. So he excluded other causes. That should not have been excluded because the jury would have found that helpful in determining causation. Therefore, the district court not only delved into the factual underpinnings and excluded Mr. Wolf improperly, but then it overstepped and it went too far. I'd like to turn to our due process argument for a moment. We've asked that this court approach our due process argument in the same manner that the Third Circuit did in Banker's Trust. In Banker's Trust, the district court excluded evidence and then dismissed claims based upon the lack of evidence. The Third Circuit found there that the district court's own rulings caused it from having an inadequate record upon which it could enter judgment. That's precisely what happened here. If we look at page 113 of the appendix, the district court found that it was excluding Wolf and stated, nowhere in his opinion does Wolf state that the other three defects would cause rot even if the bottom sash rail of the windows had a finish. That's precisely what Wolf stated in his declaration that the district court struck. So the district court dismissed the case because it found evidence lacking. But that evidence, sorry, yes. If I could, another way of looking at this case, I'd like to hear your probably unmanageable, maybe barely manageable proposed class action involving high stakes, capable lawyers on both sides that requires a tight rein to keep it under control. We have a veteran district judge who has dealt with those kinds of cases before and who approaches them fairly and who enforces deadlines tightly and doesn't allow second chances. You called it gotcha. Somebody else might call it strong case management. I'd like your comments on that perspective. Plaintiffs acknowledge that the efficient administration of a case is a concern for district courts. But the paramount concern is fairness. And here, the record before the court was complete. The motions had been filed. The arguments had been made. The district court simply did not consider them. Did you follow the scheduling order? We did, Your Honor. We submitted our motions on time. We moved to exclude plaintiffs' experts on November 20th, which is when the eliminating motions were due. We filed class certification on time. We asked for additional time, but the motion was not heard, and so we filed it on the deadline. There are no examples, I believe, in the record where plaintiffs failed to timely file motions or raise arguments. Ultimately, had the district court reviewed what was before it, the argument on due process either would not exist or would be very, very different. The basis of our argument is that we submitted arguments, but they were not considered. Due process doesn't just require an opportunity to be heard. That doesn't mean an opportunity to submit the arguments. Due process requires that the court consider those arguments and that the court engage in a fair decision-making process. And that's what was lacking here. Plaintiffs were not heard. The district court seized on two sentences and an expert report, and never so much as had a single hearing. This court stated in Messner that the district court, if it's relying upon something that an expert states in denying class certification, a hearing is necessary. Here, the district court states that... But Messner said you've got to deal with Daubert challenges if you're going to rely upon the expert's opinion. Sure. So, yes, Your Honor, Messner says both. Messner says, and this is on page 84, but a Daubert hearing is necessary under American Honda only if the witness's opinion is critical to class certification. That requirement is not met if the district court decides the motion for class certifications on grounds not addressed by the witness. Here, the district court relied upon two statements, two sentences, and an expert report to exclude that expert and deny class certification then. Therefore, it was relying upon an expert's statement in denying class certification. It was relying on your own expert's statements to exclude his opinion. Isn't that what we're talking about? That's not what Messner's about. Messner's about relying upon an expert's opinion, a defense expert who's challenged to deny class certification. Well, two things. I believe that Messner is saying that where the district court is relying on the experts, a hearing should be held. Certainly here, where the district court was seizing on two statements, and there was enough in the record to explain those statements, the district court should at minimum have had a hearing. And if it was not going to have a hearing, it should have at least considered Wolf's declaration and considered plaintiff's motion seeking to exclude defendant's expert. Due process required that the district court have done at least one of those two things. At that juncture in the case, the district court realized that this is a critical issue in the case. So the party should have been brought in, and Mr. Wolf should have been able to explain to the court why he had that fourth factor and what he based it on. That was for a jury to consider. There were other examples where the district court overstepped its bounds and seized on arguments and did not give an opportunity to plaintiffs to pursue their arguments and to respond. Well, when you say didn't have an opportunity, Ms. Hodge, you were always given notice of the judge's proceedings. Is it your position that you were actually denied an opportunity to hear the arguments you wanted to present? Yes, that is our position, because while we submitted arguments, there isn't a showing in the record that any of those arguments were considered. For example, with respect to Daubert, the district court excluded Mr. Wolf's declaration, which contained certain statements that went to this very issue. The district court did not review plaintiff's motion seeking to exclude Colby's expert, which also touched on this issue. Even if the district court was within its discretion to not review those arguments, it should have at least had a hearing. At some point, plaintiffs should have been allowed to respond to the court's concerns regarding this factual error. The argument raised on the opposition was that factual underpinnings should not be delved into by the district court. And the district court adopted that argument for a portion of its ruling, but then delved into that factual issue and did not have a hearing. When Colby made their Daubert motion, did you respond in the fashion you're responding now to the district court? Our opposition was premised on the fact that the arguments Colby raised were not proper arguments upon which to exclude an expert. They simply disagreed with his findings and they were harping on factual issues. And those are not resolved under a Daubert analysis. That was our argument. And it was adopted by the court. The court said the majority of Colby's bases for exclusion go to weight and credibility. And that goes to the jury. That same reasoning should have applied to whether or not that fourth factor was premised upon an error. And there was enough in the record to show that there was not an error. We gave that evidence to, I believe, to a jury because it goes to credibility. But at minimum to the court. But the court did not. It excluded the declaration. It excluded a surreply. And it didn't review our motion. And it didn't have a hearing. Which, I believe under Messner, it had to have had a hearing. But your expert was wrong, as you admit. Well, all right. You say, well, it didn't make any difference. But he was wrong. No, but he was not wrong. In fact, there's evidence in the record that shows that Colby... Well, we're having an argument right now, which might be enough to exclude him. If you say, all you're saying is, no, it was the other way, judge. Not the way you're thinking. The judge makes a decision and says you're not right. And he goes out because he made a fundamental error. Well, two things. He didn't make a fundamental error. The fourth factor is that the sashes being unfinished is an exacerbating factor. That when they're unfinished, it can cause a defect as well. But we know from the evidence in the record that Colby doesn't finish its sashes. I can give you another example. When Colby manufactures fixed windows, finished or unfinished, it doesn't matter. It doesn't finish the bottom of the sashes on fixed windows. And a consumer or a contractor can't take apart that window and finish the sashes. And Wolf observed fixed windows that the sashes were rotting. So there's enough evidence to show that Colby's design, even though the instructions say that all edges should be finished, that the bottom of the sashes are not designed to be finished. But more importantly, common sense tells us that there is nothing you can place on wood that will allow it to sit in pools of water. And importantly, the expert here never said all four factors had to be present. And he never said that that before this court. And so we're in the record. He makes that statement. That foot sash is not even discussed. I'd like to reserve the remainder of my time. Ms. Hotchkow, can I just quickly ask you, in Wolf's report, he goes through several factors, and one of them is preservative treatment. Yes. Is that relevant anymore in this case? It was another theory that the experts put forward. But it's out for now? It's not at issue on appeal. Thank you, Your Honor. Thank you, Ms. Hotchkow. Mr. Lynch. Good morning, Your Honors. May it please the Court? In this case, and on this appeal, appellants are trying to pound square pegs into round holes. It started with a complaint, which lumped together eight sets of named plaintiffs with different observed problems with their windows and alleged that all of those problems were caused by the same common defects. The complaint didn't specify what those common defects were. We didn't find out until more than a year later when they served their expert reports. Those expert reports made clear that their expert theories were square pegs and round holes, too. Joel Wolf's defect theory didn't match Colby's window designs. Haskell Beckham's conclusions didn't follow from his analysis, and neither of them met the requirements for expert testimony under Rule 702. Now, even taking those expert opinions at face value, the District Court also recognized that this case was not a good fit for class certification, either. When appellants first moved for class certification, the District Court analyzed appellants' arguments in their evidence, including their expert opinions, which had not yet been excluded, and found that this case was not appropriate for class certification under Rule 23b. Appellants have not challenged any part of that I thought their focus was on the renewed motion, which was decided by excluding Wolf primarily. Yes, their focus is on the renewed motion. That first Rule 23b decision, the District Court denied certification under Rule 23b, noting this court's precedent invited them on three specific issues to seek a limited issue certification under Rule 23c4. That was the limit of the court's invitation to them. Appellants, after the fact, extended that invitation a bit further into essentially a motion for reconsideration of the denial of Rule 23b certification. What is at issue on this appeal, however, is the exclusion of the District Court's subsequent decisions to exclude appellants' experts, to deny that Rule 23c4 limited issue certification, and to dismiss appellants' individual claims. For all the reasons set forth in the appellate briefing and in the District Court's decisions, the District Court did not err in excluding those experts under Rule 702, and in finding that without those experts, appellants lack sufficient evidence to proceed to trial on their individual claims for the exclusion of appellants' experts. And before diving into the details of Joel Wolf's opinion, it's worth dealing with one misconception that appears to be at the premise of a number of appellants' arguments in this appeal, namely that the flaws in their experts' opinions should merely be dealt with by cross-examination in front of a jury instead of exclusion by the court. That's just not how Rule 702 works. When the admissibility of an expert is challenged for failing to meet the requirements of Rule 702, it's not enough for the responding party to just shrug its shoulders and say, well, the jury can take that unreliable testimony for whatever it's worth. The whole reason that Rule 702 exists is the risk that juries will take unreliable expert testimony for more than what it's worth. The real question here is simply whether those experts met the requirements of Rule 702 and whether the district court abused its discretion in finding that they did not. And they did not here, and I can take, I'll follow their lead in not addressing Mr. Beckham's opinion specifically, but rather focus on Joel Wolf. Joel Wolf's theory was that the sashes of cold Not very many of them do. Colby looked at the same service records that Wolf relied on and found that less than 0.75% of all window orders in the last ten years gave rise to a subsequent complaint of rot for any reason for any window included in that order. For those less than 0.75% of orders that did have a complaint of rot, Wolf opined that at least some of them were caused by his sill sash interface defect theory. And here's how this theory works, and it's important to understand that in light of some of the arguments about severability of different parts of his opinion. Wolf observed in testing that when he blasted Colby casement windows with water, at least some of the water didn't immediately run off the sill. Now that in and of itself was not the problem. Wolf never opined that water sitting on that sill was causing damage to the sills themselves, which are finished protected wood. The damage comes, under Wolf's theory, when that water on the sill then comes in contact with the unfinished wood on the bottom of the sash. And Wolf explained how that damage happens. The unfinished wood has these natural capillaries, and when water comes into contact with these capillaries, it can then be wicked upward into the sash through a process he calls capillary action. That, according to Wolf, is how water gets from the sill to the sash in a sufficient volume to cause premature rot in casement windows. And his definition, he's very clear about this in his definition, page A190 of the appendix. Paragraph 3, he defines his theory and explains how this works, the water wicking upward through the unfinished sashes. Now, the primary problem with that theory is that it's simply wrong. Colby doesn't design its windows to have unfinished sash bottoms. In fact, Colby instructs its customers to finish all edges and faces of the windows, and its warranty makes that a condition of the warranty, that all customers properly finish the edges and faces of those windows, including the sash bottoms. Wolf just got this wrong, and appellants, they haven't disputed that that's what Colby instructs its customers to do, that that is a condition of the warranty. Wolf just made a mistake in assuming that this unfinished sash bottoms were a design feature of Colby windows, and that mistake has implications for Rule 702 in several different ways. First of all, under 702A, it means that his opinion isn't helpful to the jury. Wolf gives an opinion explaining how premature rot can occur and water can get from the sill to the sash in windows with unfinished sash bottoms, but that's not what Colby designs. Wolf's critical of an apple, but Colby designed an orange. For what Colby actually did design, windows with properly finished sash bottoms, Wolf offers no analysis of how water can penetrate that finish, how much water would penetrate that finish, how it could be wicked upward into capillaries when those capillaries are blocked by a proper finish, and whether it would do so in a sufficient volume in a sufficiently quick amount of time to actually cause premature rot in a Colby sash. That analysis just isn't there, and therefore it's not helpful to the jury, and for similar reasons, that absence of that analysis also means that to apply his opinion to any finished sashes would also be in violation of Rule 702B, C, and D, sufficient facts and data and reliable principles reliably applied to the case. There simply isn't an opinion and isn't an analysis connecting water on the sill to damaged and finished sashes. Mr. Lynch, let me tell you what concerns me about this. I don't know that I've ever seen an expert opinion where there wasn't at least an arguable error, and in almost every one I've seen there is an error somewhere. And this is pretty aggressive use of Dawbert in this case, to strike Wolf's entire opinion. I can see there might be narrow grounds to affirm that, but I'm worried that a broad affirmance would wind up giving judges way too much power to take issues away from juries. So from your perspective, what do you see as narrow grounds to authorize the exclusion of the entire Wolf opinion here? The narrowest ground this court could rule upon is the ground of waiver. Colby moved to exclude Wolf's opinion in September of 2015. Two months later, appellants filed their Dawbert response. Discovery had been closed for more than two months. These opinions had been on file for even longer than that. Had the hearing date been set? Had the hearing date been set? A trial date had been set for February of 2016, so it was quick approaching. In Colby's Dawbert motion, it raised exactly the same issues that I've just summarized for the court earlier. Appellant's response on the Dawbert motion was two sentences on that specific issue, and the district court actually quoted both of those sentences. One to the effect of, while this mistake wouldn't matter anyway, he would still believe that Colby windows are defective without any further explanation or citation to anything. And then the second sentence saying that, well, Colby should have foreseen that some customers wouldn't have finished the bottoms of their sashes, again, with no further explanation or citation to anything. Appellants simply did not give the district court the ability to conclude that this mistake was severable, that it wasn't fundamental to their opinion. The arguments they're making now on appeal, and the arguments they made later on reconsideration, did not appear in that Dawbert response motion. There was a mention in Appellant's argument and also in the briefs about a declaration that Wolf provided, giving his opinion that the finish doesn't matter. That declaration gave a new opinion. It made Wolf's opinion applicable to finish sashes, which was well past the deadline for expert opinions to be disclosed. But in addition, that declaration wasn't submitted in connection with their Dawbert response brief. The declaration was actually submitted later in connection with their motion to exclude Colby's expert. It simply was not before the court on the pending Dawbert motion. And in addition, that declaration itself didn't solve problems under Rule 702. It just gave the Ipsy Dixit opinion that, well, damage would be caused in finish sashes anyway, again, without providing any analysis or explanation of how, why, to what extent that could possibly occur. Why is that factual mistake by Wolf so fundamental that a district judge could exclude everything he says? Because that fundamental mistake is actually what the other three issues? The other three factors explain how water gets on the sill and can remain there. The fourth factor is the most important one. The fourth factor explains how that water on the sill can actually cause damage in the sashes and get upward and cause damage. Is that what Wolf said, or is that what you're saying? That's implicit from his definition here, the fact that he's unfinished wood. And also from his deposition when he talks about the nature of capillary action, how this water can be drawn upward into the capillaries of unfinished end grains of wood. It gives no explanation of how it could penetrate a proper finish. Under Dorbert, is Mr. Wolf wrong about unfinished sills? Or is he just speaking to something that, as you suggest, Mr. Lynch, isn't a condition in this case? In other words, is the court asking, in a situation where a sash is unfinished, is his opinion accurate? We had several other grounds to exclude his opinion under Rule 702. No, I understand. I'm just trying to focus on whether what he offered was mistaken or just totally inapplicable to the situation confronted in this lawsuit. It's inapplicable to Colby's design? That's what I'm asking. Correct. That's your position, right, that it's inapplicable? Yes. But that's because you agree that capillary action of this sort would be a problem, right? Right. If a user mistakenly fails to finish the underside of a sash, the reason that it's a condition of the To that extent, yes. Now there are other problems with Wolf's opinion. I can talk about a few of the alternative bases. The district court did not rely on them, but obviously this court can affirm on any grounds supported by the record. There are a couple of them. One, Mr. Wolf did not make any attempt to eliminate other obvious potential alternative causes of damage in the appellant's window specifically. The appellant's own testimony recognized many other possibilities. Several of them had problems with their home builders where water was getting into wall cavities. Others complained of condensation, which Wolf tested, determined that it wasn't a Colby-related problem. It was just a problem of in-home humidity. Wolf candidly admitted in his deposition he wasn't trying to determine the actual cause of problems in any given appellant's windows. What he was trying to do was merely determine whether his theory could be a cause by spraying the water and seeing if it remained on the sill after the fact. In addition, there's also problems with some of the other aspects of his opinion regarding the sill slope and the sash gap. Wolf was unable to cite any contemporary industry standards or support for any particular level of sash gap or sill slope other than a 40-year-old publication of the Swedish-Finnish Timber Council, which by its own terms applies only to windows of redwood and whitewood from Sweden and Finland. Wolf is really standing on his own here when it comes to his recommended level of sill slope and the recommended level of sill gap. To talk briefly about the due process arguments, there are a couple of reasons why those are not meritorious on this appeal. First is that they, at least as far as due process is concerned, that argument was waived. They never made a due process argument to the district court below. They never alerted the district court that they were alleging some kind of constitutional violation arising out of these orders. They do cite a case in their appellate brief noting that magic words aren't required to preserve a due process argument. Charles Sullivan, however, goes on to state that so long as it is self-evident that they are raising a due process challenge and that the district court needs to deal with questions of whether there is a constitutional violation occurring. They never did that below. They argued these discovery motions like any other discovery motions would be argued. The district court heard those arguments and made its decisions. The due process issue is not properly preserved for this appeal. In addition, second, they haven't identified any deficiencies in the process that they received. The court doors were always open. They had the opportunity to file motions, make arguments, submit briefs. There's no page limits in Judge Crabb's court. They could submit as much argument and evidence as they wanted. Are you serious? No page limits? No page limits. In the Western District General? She may change it after this case. There were several briefs of more than 100 pages. And the district court actually did hear those arguments, made its decisions. Hear those arguments orally? No, on the briefs. What appellants are really complaining about is the outcomes of those rulings, not the process in reaching those decisions. And a lot of their due process argument seems to rely on some arguments in discovery that Colby was somehow hiding the ball in discovery. Well, that's not the case at all. Colby didn't even know what kind of ball they were looking for until they submitted their expert reports in the summer of 2015. And the district court evaluated the chronology of discovery, noted that the pace and volume of discovery was driven by appellants, as Colby had argued. Colby actually made more than 80 separate productions in this case as fast as we had documents ready. And as the magistrate judge ordered, parties got together and prioritized those documents and it gave the high priority items first and on down the line. Now obviously there was a large volume because plaintiffs or appellants requested a large volume of documents. To get back to the question I asked earlier, were there any requests by your opponent for oral argument as opposed to just underwritten briefs? Not that I can recall. There may have been a request for argument in passing in some brief. That's not a typical practice. It wasn't an issue though. Right, and it's not a typical practice in this court either. Usually most motions are decided on the briefs. So the last aspect of this due process argument, at least as it pertains to discovery, they haven't explained how it would affect any of the outcomes in this case. They're appealing the order on summary judgment. Summary judgment had nothing to do with any information from Colby. Colby moved for summary judgment based on information from the appellants, namely the statute of limitations and what representations they claimed to have seen or heard when making their decision to buy Colby windows. And they don't explain how anything in discovery would have changed their expert's opinions whether it be Beckham's analysis or Wolfe's mistake. So for all the reasons set forth in the briefs and really more thoroughly in the district court's many, many pages of decisions in this case, we ask that this district court affirm in all respects. Thank you. Thank you, Mr. Lynch. Ms. Hart.  Colby's argument highlights that there's an issue of fact here. There's a dispute between the parties on a critical issue of fact. And in fact, this case turned on that issue and therefore should be submitted to the jury. The proof is in the pudding. Colby argues that its windows aren't designed to have unfinished sashes and therefore Wolfe was wrong. But there are facts in the record. For instance, plaintiffs' banks had their sashes replaced by Colby. The banks were tired of finishing replacement sashes, so at the last replacement, they asked that Colby send the sashes pre-finished. Those pre-finished sashes rotted. So this type of evidence is evidence that was in the record, not considered by the court, and that it should be properly considered by a jury, not a district court judge. I'd like to touch on a few things that Colby stated. Number one, with respect to our due process argument. We've focused on several aspects of what happened below in arguing that we were not The district court also didn't resolve motions to reopen discovery for four months. even though trial was approaching. The district court also faulted plaintiffs for submitting the Wolfe Declaration, which it believed to be late. Yet, the hearing on the Rule 26 hearing before the magistrate judge clearly reflects that Colby states right in the transcript, plaintiffs will go first, defendants will go second, and I quote Colby's counsel, it wouldn't make sense for defendants to go again after the rebuttal. The district court excluded the declaration, finding it was untimely. But it was filed in support of our motion to exclude Smith, 17 days later after our position to Colby's Dalbert motion. So had it been filed with our opposition, the record would have been the same before the court. It would not have changed the record. Finally, I would just like to ask that this court view Colby's waiver argument for what it is. It's a default argument repeatedly raised by Colby, not only in this case, but in the intervener case, and it's repeatedly raised by them because they don't have the facts or the law on their side. Thank you, Your Honor. Thank you, Mr. Hodge. Thank you, Mr. Lynch. Thanks to all counsel. The case is taken under advisement.